IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUSANNA M. VEACH,                           Case No. 3:12-cv-00679-MA

                    Plaintiff,              OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

SARA L. GABIN
14523 Westlake Drive
Lake Oswego, OR 97035-7700

        Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

L. JAMALA EDWARDS
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98105-7075

        Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Susanna M. Veach brings this action for judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.   This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).   For the reasons that follow, I affirm the final decision of the Commissioner.

**FACTUAL AND PROCEDURAL BACKGROUND**

On January 14, 2008, plaintiff protectively filed applications for a period of disability and disability benefits, and supplemental security income.   In both applications, plaintiff alleges disability beginning October 18, 2006, due to right knee degenerative joint disease or reflexive sympathetic dystrophy, cervical degenerative disc disease, nerve palsy with associated vision problems, Asperger's Syndrome, seasonal affective disorder, and hypertension.   The claims were initially denied on June 4, 2008, and on reconsideration on September 9, 2008.   Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a video hearing on August 19, 2010, over which the ALJ presided in Eugene, Oregon.   Plaintiff appeared with her attorney

and testified in Salem, Oregon.    A vocational expert, Mark A. McGowan appeared and testified in Eugene, Oregon.

On September 16, 2010, the ALJ issued a partially favorable decision, finding plaintiff was not disabled prior to August 27, 2009, but became disabled on that date pursuant to the medical-vocational guidelines.    Contending the ALJ acted arbitrarily in finding plaintiff disabled only as of August 27, 2009, plaintiff sought Appeals Council review.    The Appeals Council denied plaintiff's request for review on May 13, 2010, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was 55 years old as of the date of the hearing, and 56 on the date of the ALJ's decision.    Plaintiff has a high school diploma and has attended three years of college.    Plaintiff has past relevant work as an in-home care attendant, security guard, pizza maker, and counter attendant in a cafeteria.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.    Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.    Each step is potentially dispositive.    The claimant bears the burden of proof at steps one through four.    See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).    At step five, the burden shifts

to the Commissioner to show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2012. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured. 42 U.S.C. § 416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. See 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.

At step two, the ALJ found that plaintiff had the following severe impairments:  cervical spine degenerative disc disease, degenerative joint disease of the right knee, obesity, and hearing loss.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that plaintiff can occasionally climb, kneel, crouch, and crawl, can occasionally reach overhead due to cervical spine disease, and should avoid concentrated noise

exposure.  See 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

At step four, the ALJ found plaintiff unable to perform any past relevant work.  See 20 C.F.R. §§ 404.1565, 416.965.

The ALJ noted that prior to plaintiff's established disability onset date, plaintiff was an individual closely approaching advanced age, but that plaintiff's age category changed as of August 27, 2009, her 55th birthday.  On that date, plaintiff's age category changed to an individual of advanced age.

At step five, the ALJ concluded that prior to plaintiff's age category change, considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff could have performed.  However, beginning August 27, 2009, after plaintiff's age category changed, there are no jobs that exist in significant numbers in the national economy that plaintiff can perform.  See 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966.  Accordingly, the ALJ concluded that plaintiff was not disabled prior to August 27, 2009, but became disabled on that date, and has continued to be disabled through the date of the ALJ's decision.

### ISSUES ON REVIEW

On appeal to this court, plaintiff contends the ALJ committed the following errors: (1) failed to find her reflexive sympathetic dystrophy knee impairment severe at Step Two, and failed to develop

the record concerning the same; (2) improperly discredited her testimony; (3) failed to give the opinion of Mitchell Sally, M.D., controlling weight; (4) failed to properly consider the lay testimony of Rachel Rempel, plaintiff's sister; and (5) failed to include all of plaintiff's limitations in the RFC, resulting in a defective hypothetical to the VE.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039.  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.; Valentine, 574 F.3d at 690.  The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation.  Batson v. Comm'r of Soc. Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001); Batson, 359 F.3d at 1193.

## DISCUSSION

### I.    Step Two

Plaintiff argues that the ALJ erred in failing to find her reflexive sympathetic dystrophy (RSD) knee impairment severe at Step Two.  In this case, the ALJ attributed plaintiff's alleged right knee impairment to her well-documented degenerative joint disease of the right knee, finding it a severe impairment. Plaintiff alleges the ALJ additionally should have found her RSD a severe impairment at Step Two.  Plaintiff's argument fails for two reasons.

First, the Step Two threshold is low.  At Step Two, the ALJ must determine whether a claimant has one or more impairments that significantly limit his or her ability to conduct basic work activities.  Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005); 20 C.F.R. §§ 416.920(c), 416.921.  In this case, the ALJ resolved Step Two in plaintiff's favor, concluding that plaintiff had demonstrated impairments (degenerative disc disease of the cervical spine, degenerative joint disease of the right knee, obesity, and hearing loss) necessary to satisfy Step Two.  The ALJ continued the sequential decision-making process until reaching a determination at Step Five.  Any error in failing to consider plaintiff's RSD as severe did not prejudice her at Step Two, as Step Two was resolved in her favor.  Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)(any failure to list bursitis as severe at Step

Two was harmless error where ALJ considered functional limitations of bursitis at step four); Burch, 400 F.3d at 682 (any error in omitting obesity from list of severe impairments at Step Two was harmless because Step Two was resolved in claimant's favor).

Second, I reject plaintiff's argument that the record was inadequate for a determination as to her right knee impairment. See Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001)(the ALJ's "duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). In plaintiff's reply, she acknowledges that her treating physician, Jeremy Swindle, M.D., did not definitively diagnose RSD, but instead suspected RSD elements may be present. According to plaintiff, the ALJ should have developed the record further in order to definitively diagnose RSD. I disagree.

Plaintiff's complaint of right knee pain and its alleged functional limitations were considered by the ALJ when he determined her degenerative joint disease of the right knee was severe at Step Two and when determining plaintiff's RFC. Moreover, plaintiff has failed to identify any attendant functional limitations specific to RSD that were not considered in the ALJ's discussion of her right knee degenerative joint disease. Thus, the record was not inadequate for the ALJ to make a decision at Step Two. To the extent that plaintiff contends the ALJ failed to

properly evaluate the medical evidence or her alleged right knee impairment, I address those issues below. See 20 C.F.R. § 416.923 (once a claimant has surmounted Step Two, the ALJ must consider the functional limitations imposed by all medically determinable impairments in the remaining steps of the decision).

## II.  **Plaintiff's Credibility**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Carmickle v. Comm'r Soc. Security Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Tommasetti, 533 F.3d at 1039; Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir.

2002); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).
Factors the ALJ may consider when making such credibility
determinations include the objective medical evidence, the
claimant's treatment history, the claimant's daily activities,
inconsistencies in testimony, effectiveness or adverse side effects
of any pain medication, and relevant character evidence.
Tommasetti, 533 F.3d at 1039.

At the hearing, plaintiff testified that she began
experiencing chronic knee pain following an injury she received
when walking home from work. Plaintiff testified that the pain
increases with overuse, such as walking, lifting heavy objects, and
turning. Tr. 57. Plaintiff described her pain as typically a four
on a 10-point scale, and that two or three times a week, the pain
increases to a seven. Tr. 57. Plaintiff testified that her right
knee will give out occasionally, and that she uses canes or
crutches for assistance when walking. Plaintiff described neck
pain due to impingement in her cervical spine that causes pain and
numbness when turning her head to look at a computer screen.

Plaintiff described that she could stand in one place for 30
minutes only three times a day due to pain. Tr. 57. Plaintiff
stated that she can walk for half a mile before being in pain.
Plaintiff described that on a good day, she can walk two miles in
one hour, but on a bad day, it will take her up to an hour and 45
minutes. Plaintiff testified that she can sit for 30 minutes, then

needs to change positions due to pain.  Plaintiff stated that she
needs to lie down after four to six hours of being active, even
when she takes her pain medication and that on a good day, she will
lie down for two hours; on a bad day, she will lie down for six
hours.  Plaintiff further testified that she can sit in a recliner
for two to three hours.  Tr. 60.  Plaintiff stated that she could
lift 15 to 20 pounds, and could carry 10 to 15 pounds.  Tr. 63.

In a March 6, 2008 Function Report, plaintiff described that
because of her impairments, she can no longer drive, work, serve
customers, or perform housekeeping.  Tr. 201.  Plaintiff noted that
she has difficulty showering and reaching her feet, but otherwise
does not have trouble with self-care.  Plaintiff stated she is able
to make simple meals, perform household chores, and mow the lawn
with frequent breaks.  Plaintiff described that she is able to
shop, and buys a little at a time to be able to carry it.
Plaintiff noted she is able to read or work on the computer for 45
minutes at a time.  In a pain questionnaire, plaintiff described
aching, burning and tingling in her neck, hands, knees, and right
leg that occurs with overuse.

In the decision, the ALJ concluded that plaintiff has
medically determinable impairments that could reasonably be
expected to produce some symptoms, but that plaintiff's statements
concerning the intensity, persistence, and limiting effects of
those symptoms are not entirely credible.

Plaintiff complains that the ALJ erroneously determined that she is not credible citing the ALJ's boilerplate language which provides "the claimant's ... statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." According to plaintiff, the ALJ's credibility determination reverses the proper order in which the ALJ is to evaluate her credibility.

While it is true that an ALJ may not provide an RFC and then conclude, without more, that the claimant is credible only to the extent that the testimony is consistent with the RFC. However, "[t]here is nothing wrong with an ALJ stating a conclusion and then explaining it, as opposed to providing [an] explanation and then reaching a conclusion." Bostic v. Astrue, 2012 WL 786909, at *1 (D. Or. Mar. 9, 2012)(citing Black v. Astrue, 2011 WL 6130534, at *6 (D. Or. Dec. 7, 2011)). "In other words, the ALJ does not err simply by noting that a claimant's testimony is not credible to the extent it is inconsistent with the RFC where that conclusion is followed by sufficient reasoning." Cruise v. Astrue, 2012 WL 5037257, *3 (D. Or. Sept. 29, 2012), adopted, 2012 WL 4966462 (D. Or. Oct. 17, 2012).

In this case, the ALJ has not engaged in "improper sequencing" as alleged by plaintiff. The ALJ detailed numerous reasons for the adverse credibility finding. Accordingly, I examine the ALJ's

reasoning to determine whether it is supported by substantial evidence and free of legal error.

The ALJ discounted plaintiff's credibility based on her inconsistent statements of knee pain. At the start of the hearing, plaintiff testified that her pain averaged a four on a 10-point scale, and sometimes spiked to a seven a couple of times a week. Tr. 56-57. However, later on, plaintiff testified that with her nortriptyline, her knee pain is at a one to three on a 10-point scale. Tr. 65. At the hearing, the ALJ questioned why plaintiff was seeking disability if the pain medication was so effective. Plaintiff responded that she sometimes forgets to take her pain medications because she is disorganized. Tr. 66. In the decision, the ALJ also discussed that during a May 14, 2008, psychodiagnostic evaluation with Paul S. Stoltzfus, Psy. D., plaintiff reported that her pain medication is "very effective," and that when she takes her nortriptyline, she experiences "no pain" and only very minor tingling in her shin. Tr. 295. The ALJ's findings are wholly supported in the record. Thus, the ALJ could reasonably discount plaintiff's credibility based on her inconsistent allegations of disabling pain. See Tommasetti, 533 F.3d at 1040 (plaintiff's credibility can be discounted where medical evidence demonstrated favorable response to medications and conservative treatment).

The ALJ detailed numerous other inconsistencies in the record. For example, the ALJ discussed that plaintiff alleged she could not

return to her previous job providing in-home tutoring because it involved a lot of walking, carrying, and working with supplies, and that she would have difficulty carrying her purse. The ALJ found this inconsistent with plaintiff's later hearing testimony that she could carry 15 to 20 pounds a distance of 12 to 15 feet, and could safely carry 10 to 15 pounds. Tr. 28, 62-63.

The ALJ also described several inconsistencies between plaintiff's description of debilitating symptoms at the hearing and the medical evidence. When the claimant's own medical record undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007); Morgan v. Comm'r Soc. Security Admin., 169 F.3d 595, 600 (9th Cir. 1999). As the ALJ discussed, plaintiff appeared for an examination with Mitchell Sally, M.D., a state agency examining physician, in a wheelchair. As the ALJ noted, Dr. Sally found that the wheelchair was not medically necessary because plaintiff could walk easily in the exam room, and easily transferred from the wheelchair to the exam table. Indeed, a review of plaintiff's medical records from her treating physician, Dr. Swindle reveals that he prescribed a brace, not a wheelchair, for her alleged knee instability. Tr. 249. I conclude that the ALJ's determination that the medical evidence undermined plaintiff's allegations about the severity of her knee impairment is supported by substantial evidence. See Chaudry v. Astrue, 688 F.3d 661, 671 (9th Cir.

2012)(ALJ properly discounted plaintiff's credibility based on non-prescribed use of wheelchair).

The ALJ also appropriately discounted plaintiff's credibility on the basis that her alleged depression prevented her from working. As the ALJ discussed when evaluating the medical evidence at Step Two, plaintiff's depression is stable on medications, and Dr. Stoltzfus determined that plaintiff did not meet the medical criteria for depression, a finding that plaintiff does not challenge. Tr. 297-98. Because the ALJ's findings are supported by substantial evidence in the record, the ALJ could reasonably determine that the severity of plaintiff's alleged impairments were not supported by the objective medical record. Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012)(upholding adverse credibility determination where ALJ found that plaintiff's allegations of a severe anxiety disorder were not supported by objective medical evidence or plaintiff's behavior during examination).

Plaintiff argues that the ALJ inappropriately discounted her credibility based on the medical evidence of Stuart J. Currie, M.D. Plaintiff sought treatment from Dr. Currie once on February 20, 2007, for knee pain and difficulty walking. Dr. Currie reviewed the results of an MRI conducted on February 14, 2007. As the ALJ discussed, Dr. Currie noted that plaintiff's MRI displayed a "lack of serious findings" and gave plaintiff a steroid injection and a one-day work release. Plaintiff argues that the ALJ should have

given her complaints of pain greater weight because Dr. Currie also noted "plenty" of evidence of degenerative changes and diagnosed osteoarthritis.

I conclude that the ALJ accurately summarized Dr. Currie's findings. The ALJ could reasonably interpret Dr. Currie's one-day work release as further support for the interpretation that the MRI did not reveal serious findings. Moreover, Dr. Swindle repeatedly referred to plaintiff's knee MRI results as "normal" or "normal with arthritis." Tr. 339, 348, 350, 359. Even if Dr. Currie's records could be interpreted differently, the ALJ's interpretation is a reasonable one, and this court may not engage in second-guessing. Parra, 481 F.3d at 746.

Additionally, the ALJ found that plaintiff's activities of daily living are inconsistent with the level of disability she is alleging. An ALJ may consider inconsistencies in a claimant's testimony or between the testimony and a claimant's activities when assessing credibility. Molina, 674 F.3d at 1113; Berry v. Astrue, 622 F.3d 1228, 1235 (9th Cir. 2010)(inconsistencies between self-reported symptoms and activities supported adverse credibility determination).

The ALJ discussed that plaintiff testified that she cannot walk or stand for four hours in a day, that it takes her two hours to walk two miles and that she needs to take many breaks. However, the ALJ noted that in plaintiff's function report, she described

extensive daily activities, such as reading, doing household
chores, preparing meals, and mowing the lawn.   The ALJ found this
inconsistent with plaintiff's testimony that she regularly walks to
the library.

Plaintiff contends that her statements are not contradictory
because she testified that she takes breaks every 30 minutes when
doing chores, that she uses canes as support when walking, and that
although she can walk two to three miles, her knee hurts after just
a half mile.   However, as the ALJ noted, plaintiff inconsistently
reported that she can be active for seven hours before needing to
rest.   On balance, after reviewing the record as a whole, I
conclude that the ALJ rationally interpreted the evidence.
Carmickle, 533 F.3d at 1165.   The ALJ has cited numerous
activities, such as plaintiff's ability to prepare meals, perform
household chores, read and type on the computer, and go shopping on
a regular basis, which indicate that plaintiff had a greater
functional capacity than she alleged.   See Rollins v. Massanari,
261 F.3d 853, 857 (9th Cir. 2001)(ALJ may reject the claimant's
testimony when inconsistent with the claimant's daily activities
and contrary to the medical evidence).

I further conclude that even if the ALJ erred in discrediting
plaintiff based on her activities of daily living, any such error
is harmless.   The remaining reasons supplied by the ALJ for the
adverse credibility determination are supported by substantial

evidence in the record.  Because those remaining reasons, when taken together, still amount to clear and convincing evidence, the ALJ's adverse credibility determination must be sustained.  See Carmickle, 533 F.3d at 1162; Batson, 359 F.3d at 1197.

## III. Physician's Opinions

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Rodriquez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons.  Bayliss, 427 F.3d at 1216.  An ALJ can meet this burden by providing a detailed summary of the facts and conflicting medical evidence, stating his own interpretation of that evidence, and making findings.  Tommasetti, 533 F.3d at 1041; Carmickle, 533 F.3d at 1164; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009); Magallanes, 881 F.2d at 751.  An ALJ also may discount a physician's opinion that is based on a claimant's discredited subjective complaints. Tommasetti, 533 F.3d at 1040.

Plaintiff argues that the ALJ erred in failing to adopt the opinion of Dr. Sally, an examining physician.  On May 10, 2008, Dr. Sally reviewed plaintiff's medical records, interviewed plaintiff, and conducted a brief physical examination.  Dr. Sally opined that plaintiff could be expected to stand and walk for four hours in an eight hour day, with rests, could sit for eight hours, found no postural or environmental restrictions, and did not quantify her lifting restrictions.  Dr. Sally also found that plaintiff did not need to be in a wheelchair, despite that plaintiff appeared in one for the examination.  Plaintiff informed Dr. Sally that she had been advised to "stay off her knee."  Dr. Sally noted that plaintiff favored her right leg, but could move about the exam room easily, with a slightly abnormal gait and transferred from the wheelchair to the exam table easily.  Tr. 29, 288.

The ALJ gave Dr. Sally's opinion little weight, finding the limitations he described unsupported by objective evidence in the record.  The ALJ also noted that Dr. Sally's opinion that plaintiff could stand and walk for four hours inconsistent with plaintiff's activities of daily living, and was unsupported by medically acceptable clinical and diagnostic techniques.

Dr. Sally's opinion was contradicted by plaintiff's treating physician, Dr. Swindle, who advised plaintiff not to file for disability before maximizing medication options or other orthopedic interventions.  Tr. 360.  Notably, plaintiff does not challenge the

19 - OPINION AND ORDER

ALJ's analysis of Dr. Swindle's opinion. Dr. Sally's opinion also was contradicted by the opinions of the state reviewing physicians, Martin B. Lahr, M.D., and Linda L. Jensen, M.D., who found plaintiff could stand and walk for six hours. Tr. 305, 329. Thus, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Sally's opinion. Tommasetti, 533 F.3d at 1041.

The ALJ could discount Dr. Sally's opinion because it was inconsistent with the medical evidence in the record. The ALJ's findings are wholly supported by substantial evidence in the record. The ALJ provided a detailed review of all the medical evidence of record.

For example, the ALJ discussed that in June 2007, plaintiff sought emergency room treatment for knee pain after falling down on her walk home from work. Plaintiff walked to the hospital, and described that she had fallen four days earlier. When the emergency room doctor met with her, she described her pain at a one on a 10-point scale. As the ALJ discussed, when plaintiff returned to the hospital six days later, she could bear weight on her knee, walked without a limp, had full range of motion, and reported knee pain only when bumped. The ALJ's findings are supported by substantial evidence in the record.

And, the ALJ discussed that plaintiff reported to Dr. Swindle on several occasions that her knee pain was significantly improved with nortriptyline, and that Dr. Swindle did not feel that

disability was appropriate until after other medication and orthopedic interventions had been exhausted. The ALJ also noted that plaintiff reported to Dr. Stoltzfus that she experiences no knee pain with nortriptyline. Moreover, as discussed above, Dr. Currie and Dr. Swindle noted the lack of serious findings with respect to her degenerative joint disease. And, as the ALJ noted, plaintiff consistently demonstrated a full range of motion in the right knee. Thus, I conclude the ALJ cited specific and legitimate reasons for discounting the opinion Dr. Sally.

To the extent that the ALJ rejected Dr. Sally's opinion because it was not supported by medically acceptable clinical and diagnostic techniques, the ALJ's decision is not supported by substantial evidence in the record. A review of Dr. Sally's report indicates that he performed several objective tests, such as the Romberg test, range of motion tests, leg raises, grip strength tests, and others, during his examination of plaintiff. However, any such error is harmless. As noted above, the inconsistency with the medical evidence alone is a specific and legitimate reason for discounting the opinion of Dr. Sally. See Molina, 674 F.3d 1117 (court will not reverse for errors that are "'inconsequential to the ultimate nondisability determination.'") (quoting Carmickle, 533 F.3d at 1162).

////

////

### III. **Lay Testimony.**

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ is required to account for competent lay witness testimony, and if he rejects it, to provide germane reasons for doing so. Valentine, 574 F.3d at 694; Dodrill, 12 F.3d at 919.

In this case, plaintiff contends that the ALJ inappropriately discounted the testimony of Rachel Rempel, plaintiff's sister. In her opening brief, plaintiff acknowledged that Ms. Rempel's testimony described symptoms and limitations nearly identical those endorsed by plaintiff. In her reply brief, plaintiff complains that the ALJ was not free to reject Ms. Rempel's testimony that was distinct from plaintiff's.

In the decision, the ALJ rejected Ms. Rempel's testimony in the same rationale when rejecting plaintiff's subjective complaints. The ALJ also stated that Ms. Rempel indicated that she was unsure of what plaintiff did on a daily basis, and the ALJ noted the Ms. Rempel shops regularly with plaintiff, and thus the ALJ implicitly rejected Ms. Rempel's testimony on that basis as well.

To the extent that the ALJ erred in failing to separately explain his rationale for rejecting Ms. Rempel's testimony, any such error is harmless. <u>Molina</u>, 674 F.3d at 1115. With respect to the allegedly "distinct observations" made by Ms. Rempel that plaintiff takes twice as long to complete tasks, has difficultly exiting the bathtub, does not get down on the floor, suffers leg instability, and was fired or laid off for not getting along with others, I conclude that her lay testimony is substantially similar to plaintiff's subjective complaints. <u>Compare</u> Tr. 213-218 <u>with</u> Tr. 200-08. Thus, in light of my conclusion that the ALJ provided clear and convincing reasons for rejecting plaintiff's subjective complaints, and that Ms. Rempel's testimony is similar to those complaints, it follows that the ALJ gave germane reasons for discounting her testimony. <u>Valentine</u>, 574 F.3d at 694 (where ALJ has provided clear and convincing reasons for rejecting plaintiff's testimony, those reasons are equally germane to similar to testimony by lay witness); <u>Molina</u>, 674 F.3d at 1117 (same).

## V.    <u>VE Testimony</u>

As discussed above, I have concluded that the ALJ did not err in the fashioning of plaintiff's RFC. Because the hypothetical posed to the VE included all of those limitations which the ALJ deemed to be credible and consistent with the medical evidence, the ALJ could reasonably rely upon the VE's testimony. <u>Stubbs-</u>

<u>Danielson</u>, 539 F.3d 1169, 1175-76 (9th Cir. 2008); <u>Valentine</u>, 574 F.3d at 694.

### CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED.   This action is DISMISSED.

IT IS SO ORDERED.

DATED this *10* day of JUNE, 2013.

Malcolm F. Marsh
United States District Judge